UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Universal Hospital Services, Inc.,                    Civil File No. 01-1921 (RHK/JMM)

           Plaintiff,

v.                                                    **ORDER AND MEMORANDUM GRANTING A TEMPORARY RESTRAINING ORDER AND EXPEDITED DISCOVERY**

Paul Rumbos,

           Defendant.

---

Bruce J. Douglas and Daniel J. Ballentine, Minneapolis, Minnesota, for Plaintiff.

Richard A. Lind and Mark D. Covin, Minneapolis, Minnesota, for Defendant.

---

This matter is before the Court on Plaintiff's Motion for a Temporary Restraining Order. The Court held a hearing on the Motion on Friday, November 2, 2001. For the following reasons, the Court grants Plaintiff's motion.

### Background

Defendant Rumbos was employed by Universal Hospital Services, Inc. ("UHS") from May 1, 2001, until September 21, 2001. UHS provides various types of movable medical equipment to health care facilities across the country. Rumbos was employed as an Account Development Specialist in the Philadelphia, Pennsylvania, office. During his employment

Rumbos had access to confidential information, including customer lists and pricing information. In his capacity as an Account Development Specialist, Rumbos met with several UHS clients.

Upon being hired by UHS, Rumbos entered into an Employment Agreement which contained a covenant not to compete and non-disclosure provisions. Specifically Rumbos agreed that during, his employment with UHS and for twelve (12) months thereafter he would not:

> a) engage in any activity that competes with UHS Business within a one hundred (100) mile radius from the center of any city/cities in which a UHS office for with Employee had any oversight or management responsibilities or through which Employee operated during the last twelve (12) months of employment with UHS is located (hereinafter referenced as Covered Geographic Area);
> b) induce any Clients of UHS located within the Covered Geographic Area to patronize any business which competes with UHS;
> c) canvas, solicit, or accept any similar business from any Client of UHS located within the Covered Geographic Area of UHS;
> d) request or advise any Client or Supplier of UHS to withdraw, reduce, or cancel their business or relationship with UHS;
> e) disclose to any other person, firm, partnership, or corporation the names, addresses or telephone numbers; of other protected information of any of the Clients of UHS; or,
> f) induce, canvas, solicit, request or advise any employees to accept employment with any person, firm or business which competes with UHS.

(Declaration of Darren J. Thieding ¶ 8, Exhibit C.)

On September 21, 2001, Rumbos resigned from UHS and began working for Mediq Inc. ("Mediq").[1] Mediq is a direct competitor of UHS in the movable medical equipment

---

[1] Rumbos had also worked for Mediq for several years prior to working at UHS.

market. On the day of his resignation UHS reminded Rumbos of his obligations under the Employment Agreement. UHS contends that on or around the day of his resignation Rumbos attempted to take a number of files from UHS. UHS also contends that Rumbos has solicited business from several UHS clients since September 21, 2001.

UHS brought this action alleging that Rumbos is breaching his Employment Agreement with UHS by using confidential information and soliciting UHS clients within the Covered Ceographic Area. UHS moves for a temporary restraining order seeking to restrain Rumbos from continuing to violate the Employment Agreement.

## Analysis

Under Eighth Circuit precedent, a temporary restraining order may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the balance of harms favors the movant; (3) that the public interest favors the movant; and (4) that the movant will suffer irreparable harm absent the restraining order. Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). Injunctive relief is considered to be a "drastic and extraordinary remedy that is not to be routinely granted." Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed. Cir. 1993). The party requesting the injunctive relief bears the "complete burden" of proving all the factors listed above.[2] Gelco Corp. v.

---

[2] By a brief served and filed the morning of the hearing Defendant has asserted that this Court lacks Subject Matter Jurisdiction over the case because of the amount in controversy. Plaintiff has had no real opportunity to respond but alleged, during oral argument, that UHS has suffered real economic harm as a result of clients cancelling their contracts with UHS. At the present time this Court is satisfied that it has jurisdiction.

Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987).

**1. Likelihood of Success**

A restrictive covenant in an employment agreement entered into at the inception of the employment relationship does not require independent consideration. National Recruiters, Inc. v. Cashman, 323 N.W.2d 736, 740 (Minn. 1982); Overholt Crop Ins. Services Co., Inc. v. Bredeson, 437 N.W.2d 698, 702 (Minn. Ct. App. 1989). The Employment Agreement in this case was entered into at the beginning of, and in consideration for, Rumbos's employment with UHS. Furthermore, to be valid, a restrictive covenant must also be reasonable in scope. Overholt Crop Ins., 437 N.W.2d at 703. Here the covenant is for a reasonable period of time – one year – and "[s]ince the geographical scope of this covenant is limited to the areas in which [Rumbos] actually worked" for UHS, this Court finds it reasonable. Id. UHS has therefore shown that the Employment Agreement with Rumbos is valid and likely to be enforced.

**2. Irreparable Harm**

Irreparable harm may be inferred from the breach of a valid restrictive covenant. Alside, Inc. v. Larson, 220 N.W.2d 274, 278 (Minn. 1974); Medtronic, Inc. v. Gibbons, 527 F. Supp. 1085, 1091 (D. Minn. 1981). Moreover, irreparable harm is often inferred from the threatened misappropriation of trade secrets or other confidential information. Minn. Stat. §325C.02. UHS has shown a likelihood that Rumbos is breaching a valid restrictive covenant. UHS has also shown that Rumbos's employment with Mediq in a similar position

4

as he held with UHS presents a very real threat that UHS's trade secrets and confidential information will be wrongfully disclosed to Mediq or used to the benefit of Mediq's business vis-a-vis UHS. Accordingly, the Court concludes that UHS is likely to be irreparably harmed if a restraining order does not issue.

### 3. Balance of Harms

The balance of harms in this case clearly favors UHS. The relief requested would not prohibit Rumbos from working at Mediq or even performing the same function that he now performs so long as he did so outside of the Covered Geographic Area and did not solicit clients of UHS for one year. In contrast, UHS is faced with irreparable harm if Rumbos is not prevented from continuing to violate the covenant not to compete.

### 4. Public Interest

Public policy favors the enforcement of valid contracts and the protection of legitimate business interests. The Employment Agreement appears to be valid and UHS has shown that without the restraining order its legitimate business interests will be threatened. These factors weigh in favor of finding a restraining order in the public interest.

### Conclusion

All of the Dataphase factors weigh in favor of the issuance of the relief sought by UHS. Accordingly, **IT IS HEREBY ORDERED** THAT:

1. Plaintiff's Motion for a Temporary Restraining Order is GRANTED as follows:

    a. Pending a temporary injunction hearing and the Court's decision on Plaintiff's Motion for a Temporary Injunction, Defendant is directed to keep, retain, and safeguard any and all files, documents, or data (in paper, electronic, or other form) that Defendant may have taken from Plaintiff in their original form, order, and condition.

    b. Pending a temporary injunction hearing and the Court's decision on Plaintiff's Motion for a Temporary Injunction, Defendant, singly or in concert with any other person or entity, is restrained and enjoined from:

        (i) Directly or indirectly canvassing, soliciting, or accepting any similar business from any person, firm, corporation, or other entity to whom UHS or any employee, agent, or salesperson of UHS has rented or provided any medical equipment, supplies, or services at any time between September 22, 2000 and September 21, 2001 within one hundred (100) miles of the center of Philadelphia, Pennsylvania;

        (ii) Directly or indirectly inducing, canvassing, soliciting, requesting, or advising any employee of UHS to accept employment with any person, firm, or business that competes with UHS; and

        (iii) Destroying, mutilating, or altering all documents or data (in

paper, electronic, or other form) that contain, incorporate, or reference information or material in Plaintiff's files that are in Defendant's possession of under his control.

2. Plaintiff shall post a bond in the amount of $ 5,000 to secure this Restraining Order. In lieu of a bond, plaintiff may post cash or its equivalent with the Clerk of Court.

3. Plaintiff's Motion for Expedited Discovery is GRANTED. UHS and Rumbos shall be allowed to conduct depositions and obtain documents from individuals and entities to the extent that such discovery is relevant to the pending Motion for a Temporary Injunction.

4. By separate Order, the Court will schedule a Hearing on the Temporary Injunction.

Dated: November 2 , 2001

  
_____  
Richard H. Kyle  
United States District Court Judge

7